## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ELITE REFRESHMENT SERVICES LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:19-cv-00425-MHH** |
| | ) | |
| **LIBERTY MUTUAL GROUP, INC. d/b/a OHIO SECURITY INSURANCE COMPANY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

In this action, Elite Refreshment Services, LLC seeks insurance benefits under an employment practices liability provision (EPL, for short) in a commercial general liability insurance policy that Ohio Security Insurance Company issued to Elite Refreshment. (Doc. 8, pp. 3–4, ¶¶ 9–16). Elite Refreshment contends that Ohio Security should have paid defense costs and funded a settlement for an employment discrimination lawsuit against Elite Refreshment. (Doc. 8, p. 5, ¶ 20). Ohio Security has asked the Court to dismiss this action. (Doc. 15). Ohio Security argues that Elite Refreshment is not entitled to insurance coverage for the underlying discrimination action under the unambiguous terms of the EPL coverage form in the CGL policy. The relevant provisions of the EPL coverage form, read in conjunction with the factual allegations in the complaint in the underlying discrimination action,

1

indicate that Ohio Security does not owe Elite Refreshment coverage for defense or indemnification expenses incurred in the underlying employment discrimination action.[1]

To reach this conclusion, the Court applied Alabama law.[2] Under Alabama law, general rules of contract construction govern a court's interpretation of an insurance policy. *Farmers & Merch. Bank v. Home Ins. Co.*, 514 So. 2d 825, 831 (Ala. 1987) (citations omitted). "[T]he interpretation of the contract and its legal effect are questions of law" for a court to decide. *Sentinel Ins. Co. v. Alabama Mun. Ins. Corp.*, 188 So. 3d 640, 644 (Ala. 2015); *see also St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 897 (11th Cir. 2009) (applying Alabama law). "[A]mbiguities in an insurance contract must be construed

---

[1] The Court's consideration of the insurance policy at issue does not convert Ohio Security's motion to dismiss into a motion for summary judgment because the terms of the insurance policy are central to Elite Refreshment's claim for benefits under the policy, and the parties do not dispute the authenticity of the policy or the language of the policy provisions at issue. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Similarly, the Court's consideration of the operative complaint in the underlying discrimination action does not convert the motion to dismiss into a motion for summary judgment. *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015) (citations omitted) (On a motion to dismiss, "[c]ourts may take judicial notice of publicly filed documents . . . .").

[2] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are completely diverse, and the amount in controversy exceeds $75,000. (Doc. 1). The parties agree that Alabama law supplies the substantive principles concerning the interpretation of the insurance policy at issue. *See St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 894 n.1 (11th Cir. 2009) ("A federal court sitting in diversity, as in this case, must apply the choice of law principles of the state in which it sits. In determining which state's law applies in a contract dispute, Alabama follows the principle of *lex loci contractus,* applying the law of the state where the contract was formed.").

liberally in favor of the insured." *Johnson v. Allstate Ins. Co.*, 505 So. 2d 362, 365 (Ala. 1987). "If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties." *Johnson*, 505 So. 2d at 365; *see also St. Paul Fire & Marine*, 572 F.3d at 898 (same).

Under Alabama law, an insurance policy may give rise to a duty to defend and a duty to indemnify. *U.S. Fidelity & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985). An insurer's duty to defend "is more extensive than its duty to indemnify." *Armstrong*, 479 So. 2d at 1168. "Under Alabama law, whether an insurance company owes its insured a duty to provide a defense is determined primarily by the allegations contained in the complaint." *St. Paul Fire & Marine*, 572 F.3d at 894–95. "Where facts are alleged in the complaint to support a cause of action, it is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action." *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1012 (Ala. 2005). "If the allegations in the underlying complaint show an occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured." *St. Paul Fire & Marine*, 572 F.3d at 895.

In the underlying employment discrimination action, the plaintiff alleged that Elite Refreshment hired her as a housekeeper in August of 2016. (Doc. 25-1, p. 6).

The plaintiff asserted that while she worked for Elite Refreshment, her supervisor discriminated against her because of her age and her "sexual affiliation." (Doc. 25-1, p. 6-12). The plaintiff contended that Elite Refreshment fired her in October 25, 2016. (Doc. 25-1, p. 7). The plaintiff alleged that "[o]n October 31, 2016, within 180 days of the last discriminatory act of which [she] complain[ed], [she] filed a Charge of Discrimination" with the EEOC. (Doc. 25-1, p. 5).

In her EEOC charge, the plaintiff indicated under penalty of perjury that October 25, 2016 was the last day on which discrimination took place. She did not identify her charge as a "continuing action." (Doc. 25-1, p. 42).

<table>
<tr><td colspan="2">DISCRIMINATION BASED ON (Check appropriate box(es).)</td><td colspan="2">DATE(S) DISCRIMINATION TOOK PLACE</td></tr>
<tr><td></td><td></td><td>Earliest</td><td>Latest</td></tr>
<tr><td>☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN</td><td></td><td>08-22-2016</td><td>10-25-2016</td></tr>
<tr><td>☒ RETALIATION   ☒ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION<br>☐ OTHER (Specify)</td><td></td><td colspan="2">☐ CONTINUING ACTION</td></tr>
</table>

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):
I was hired by the above named employer in August 2016 as a Housekeeper. During my employment, I was harassed by my supervisor Brenda Anders. Ms. Anders constantly called me on the telephone for no reason. She also stated that she heard that I liked women. I contacted the owner, Steve Mosley and complained about Ms. Anders. In response to my complaint, Mr. Mosley told me that he does not believe that Ms. Anders made the comment to me and that he just wanted to get the job done. Ms. Anders also made comments about me being slow compared to other similarly situated younger employees. On October 25, 2016, I was discharged.

I believe that I have been discriminated against because of my sex (female) in violation of Title VII of the Civil Rights Act of 1964, as amended, and my age (47), and in retaliation for engaging in a protected activity, in violation of the Age Discrimination in Employment Act of 1964, as amended.

(Doc. 25-1, p. 42). Nevertheless, in each of the three counts of her complaint, the underlying plaintiff alleged that she "is suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein unless enjoined by this court," (Doc. 25-1, p. 9, ¶ 34; Doc. 25-1, p. 10, ¶ 39; Doc. 25-1, p. 13, ¶ 51), and she asked the judge who presided over the underlying

action to "award [] the following relief:  Enter a declaratory judgment that Defendant's policies, practices, and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by the ADEA" and "by Title VII,'" (Doc. 25-1, p. 9, ¶ a; Doc. 25-1, p. 11, ¶ a; Doc. 25-1, p. 13, ¶ a).  In each count of the underlying complaint, the plaintiff requested declaratory relief, compensatory damages, and attorney fees.  (Doc. 25-1, p. 9, ¶ c; Doc. 25-1, p. 11, ¶ c; Doc. 25-1, pp. 13–14, ¶ c).

Elite Refreshment asked Ohio Security to provide coverage for the underlying discrimination action.  Ohio Security refused, stating that there was no coverage under the EPL form because the underlying complaint indicated that "[t]he date of the alleged wrongful termination was October 25, 2016, with other alleged disparate treatment prior to that date" such that the "employment-related practices [] occurred prior to the effective date" of the policy.  (Doc. 25-1, p. 36; *see* Doc. 8, p. 4, ¶¶ 14–15).  Elite Refreshment defended and settled the underlying employment action at its own expense.  (Doc. 8, p. 4, ¶ 16).

Elite Refreshment's policy with Ohio Surety covered consecutive policy periods from February 6, 2017 to February 6, 2019.  (Doc. 8, p. 3, ¶ 9).  The policy provided "claims made and reported coverage." (Doc. 15-1, p. 183).  Under the EPL Coverage Form, Ohio Security agreed to "pay on behalf of" Elite Refreshment "'damages' in excess of the Deductible arising out of any 'employment practices' to

which this insurance applies." (Doc. 15-1, p. 183). As defined in the policy, the term "'Damages' means monetary amounts to which this insurance applies and which the insured is legally obligated to pay as judgments or awards, or as settlements to which we have agreed in writing." (Doc. 15-1, p. 194).[3] As defined in the policy, the term "employment practices" embraces wrongful termination of employment, including retaliatory discharge, and discrimination based on "age, . . . sexual orientation or sexual preference or any other protected class or characteristic" established by federal statute. (Doc. 15-1, p. 195). The EPL coverage provision states:

> This insurance applies to such "damages" only if:
>
> . . .
>
> c.     Such "employment practices" occurred after the Retroactive Date, if any, shown in the Declarations and before the end of the "policy period."

(Doc. 15-1, p. 183). The EPL Coverage Form provided a retroactive date of January 31, 2017. (Doc. 8*, p. 3, ¶ 10; *see also* Doc. 15-1, p. 21).

---

[3] The policy expressly excludes from the definition of "damages" equitable and injunctive relief or legal fees when an underlying plaintiff seeks only equitable relief. (Doc. 15-1, p. 194) ("'Damages' do not include: . . . (2) Equitable relief, injunctive relief, declarative relief or any other relief or recovery other than money; (3) 'Legal fees' when solely equitable relief, injunctive relief, declarative relief or any other relied or recovery other than money is sought.").

These policy provisions, read together, unambiguously supply EPL coverage to Elite Refreshment only for employment practices that occurred between January 31, 2017 and February 6, 2019. The underlying complaint establishes that the employment practices at issue in the discrimination action against Elite Refreshment ended, at the latest, on October 25, 2016. Therefore, under the plain language of the policy, because the final act of discrimination occurred more than three months before the January 31, 2017 retroactive date for the start of coverage, Ohio Security had no obligation to defend or indemnify Elite Refreshment in the underlying action. Nothing on the face of the underlying complaint indicates that Ohio Security breached its policy with Elite Refreshment by refusing coverage for the underlying employment discrimination action.

Elite Refreshment argues that the underlying plaintiff's allegations that Elite Refreshment's "policies, practices, and procedures" continued to violate her rights under the ADEA and Title VII and continued to injure her and that Elite Refreshment had "a habit and/or practice" of sexually harassing employees and retaliating against employees who engaged in protected activity triggered EPL coverage under the Ohio Security policy. Elite Refreshment urges the Court to regard these allegations of ongoing conduct as "employment practices" occurring after the retroactive date of January 31, 2017. That argument is not persuasive.

Per the Alabama Supreme Court's decision in *Hartford Cas. Ins. Co.*, the underlying plaintiff's description of continuing injury and continuing violations of the law based on habits and practices are "legal phraseology" offered to support the plaintiff's request for injunctive relief. 928 So. 2d at 1012. The underlying plaintiff's assertions of ongoing conduct are expressly rooted in her factual allegations, (*see, e.g.*, Doc. 25-1, p. 9, ¶ 34, describing "irreparable injury from Defendant's unlawful policies and practices as set forth herein"), and those factual allegations expressly state that Elite Refreshment terminated the underlying plaintiff on October 25, 2016, (Doc. 25-1, p. 7), and that she filed her October 31, 2016 EEOC Charge of Discrimination following Elite Refreshment's "last discriminatory act," (Doc. 25-1, p. 5, ¶ 7). The underlying plaintiff's EEOC charge, which was incorporated by reference in her complaint, states that the "latest" date discrimination took place was October 25, 2016. The plaintiff did not describe her EEOC charge as a "continuing action." (Doc. 25-1, p. 42).

Under Alabama law, the continuing conduct/injury language in the underlying plaintiff's prayers for relief "is framed by the factual allegations" of paragraph 7 and paragraphs 11 through 26 of the underlying complaint. 928 So. 2d at 1012. As the Alabama Supreme Court stated in *Hartford Cas. Ins. Co.*, "when the complaint supplies descriptive facts and those facts are irreconcilable with a legal theory, such as "negligence," inserted in the complaint, the facts, not the mere assertion of the

legal theory, determine the insurer's duty to defend." 928 So. 2d at 1012.

Accordingly, given that the underlying plaintiff's factual allegations establish that

Elite Refreshment's last act of discrimination, i.e. its last "employment practice,"

predated the retroactive start date in the Ohio Security EPL coverage form, the

underlying plaintiff's legal phraseology concerning continuing practices and injuries

does not trigger EPL coverage.

Because an insurer has a duty under Alabama law to investigate an insured's

request for coverage and because an insurer must construe an insurance policy in

favor of its insured, when the allegations on the face of the underlying complaint do

not identify a covered event – here, an employment practice post-dating January 31,

2017 – an insurer sometimes must consider other facts "'which did exist but were

not alleged'" in the underlying complaint to determine whether it owes its insured a

duty to defend. *Hartford Cas. Ins. Co.*, 928 So. 2d at 1010 (quoting *Tanner v. State

Farm Fire & Casualty Co.,* 874 So. 2d 1058, 1064–65 (Ala. 2003)); *see also

Hartford Cas. Ins. Co.*, 928 So. 2d at 1012 ("Because the averments of the complaint

do not establish a duty to defend, we turn to the second prong of the analysis, i.e.,

whether other facts that 'may be proved by admissible evidence' but that were not

alleged in the complaint would show or create a reasonable inference that there had

been an 'occurrence' within the meaning of the policy so as to require Hartford to

defend Merchants in Barnett's action against it."). The Court does not have to look

beyond the allegations of the underlying complaint in this instance because in its complaint in this action, Elite Refreshment has not alleged facts that could be proved by admissible evidence to establish a post-January 31, 2017 employment practice that would trigger coverage.

For these reasons, as a matter of Alabama law, Ohio Security did not breach its contract with Elite Refreshment when Ohio Security denied Elite Refreshment's request for defense and indemnification in the underlying employment discrimination action.[4] Therefore, the Court will dismiss this action with prejudice.

**DONE** and **ORDERED** this January 29, 2020.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[4] Because Ohio Security did not breach its contract with Elite Refreshment, Elite Refreshment's bad faith failure to pay claim against Ohio Security fails as a matter of Alabama law. *State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 257 (Ala. 2013) (explaining that under Alabama law, the first element of a bad faith failure to pay claim is "an insurance contract between the parties and a breach thereof by the defendant").